**Sammy SANTIAGO, Plaintiff,**

v.

**C.O. CAMPISI SHIELD # 4592, and
Department of Corrections
Defendants, Defendants.**

**No. 97 Civ. 0418(PKL).**

United States District Court,
S.D. New York.

April 5, 2000.

Sammy Santiago, Pine City, NY, pro se.

Michael D. Hess, Corporation Counsel of the City of New York, Lisa M. Brauner, of counsel, New York City, for defendants.

## OPINION AND ORDER

LEISURE, District Judge.

*Pro se* plaintiff Sammy Santiago brings this 42 U.S.C. § 1983 action alleging deprivation of his Eighth Amendment rights while he was a pre-trial detainee under defendants' supervision. Defendants move for summary judgment pursuant to Fed. R.Civ.P. 56(e). For the reasons stated herein, defendants' motion is granted.

## BACKGROUND

Plaintiff's suit involves an assault he allegedly suffered while in pre-trial detention at the New York Supreme Court, Bronx County Courthouse in June 1996. According to plaintiff, on June 17 he asked Corrections Officer Louis Campisi if he could use a different bathroom, as the inmates' toilet was broken. In response, Campisi allegedly reached a hand through a prison gate that separated him from plaintiff and "brushed underneath [plaintiff's] eyes to near [his] nose." Santiago Dep. at 129–30. According to plaintiff, Campisi's action was intended to jab both of his eyes. Plaintiff alleges that defendant remarked to another corrections officer that he would "take care of [Santiago] later," Compl. at 3, and that, subsequently, on June 18, defendant Campisi sought him out and assaulted him without provocation. In this second alleged incident, plaintiff maintains that Campisi slapped him on the jaw, near his goatee, with the open palm of his right hand.

On June 17, within hours after the first alleged incident, plaintiff underwent a routine medical examination at the Montefiore Hospital Rikers Island Health Services Unit. See Brauner Decl, Exh. D. According to the record of that examination, plaintiff said nothing of the alleged assault by Campisi, nor did he report any injury or infirmity to the area of his body involved in the assault. See id. The only medical problem indicated in the report is plaintiff's depression, which was manifested in a suicide attempt two months earlier while plaintiff was in federal custody, and for which plaintiff was receiving treatment with antidepressant drugs. See id.

On June 21, plaintiff requested a mental health evaluation and was examined by a registered nurse. See Brauner Decl., Exh. E. The record of this evaluation describes plaintiff's history of depression, suicide attempts, and insomnia. See id. Plaintiff complained to the nurse that he was having difficulty sleeping, but plaintiff otherwise was described as in a "[p]leasant mood tonight." Id. The record makes no mention of either assault alleged by plaintiff, and there is no indication that plaintiff's treatment was modified. See id.

It is undisputed that plaintiff did not report any incident or injury to prison officials until ten days after the second assault allegedly occurred. On June 28, Santiago reported the alleged assaults to the Department of Corrections, which that day generated an "Injury to Inmate" report and sent plaintiff for a medical examination. During the examination, plaintiff reported the injuries alleged in his complaint to the examining clinician, who noted them in his report. See Brauner Decl., Exh. F. The clinician found "no swelling or tenderness" and "no evidence of other injuries." See id.

On July 1, investigating supervisor Captain Frank Squillante issued his report. See Brauner Decl., Exh. M. Plaintiff told Squillante that Campisi had committed these assaults, and that two other corrections officers, Darryl Chisholm and Benjamin Benitez, had witnessed them.[1] See id. Squillante determined that Chisholm was off-duty and had signed out when the assault allegedly occurred, and that Benitez was confirmed to have taken the entire day off. See id. Although Campisi was on duty, he was not assigned to the area where plaintiff was being held, nor did his duties require him to go there. See id. This is corroborated by the assignment schedule for corrections officers at the Bronx Supreme Courthouse, see Brauner Decl., Exh. B, and by the facility's inmate registers. See Brauner Decl., Exh. C. After interviewing the Campisi and the two alleged witnesses and obtaining their signed statements that they knew nothing of the incidents alleged, Squillante concluded that:

> which the Department matched with the officers' names during its investigation.

---

1. In reporting the alleged incidents to the Department of Corrections, plaintiff referred to all three officers by their shield numbers,

1. Inmate Santiago, Sammy fabricated this claim for personal reasons or reasons unknown by this investigator.

2. No records indicate any incident of this inmate being in the alleged area on said date and time.

3. Staff who was identified was not working at the time or day of this claim other than C.O. Campisi.

4. Medical review confirmed no injuries of the subject.

Brauner Decl., Exh. M. On July 1, Tour Commander Luis Velez reviewed the investigation report and concurred with Squillante's findings, concluding that plaintiff "fabricated this allegation" and that there were "no medical findings nor tangible evidence to support subject inmate's allegation." Brauner Decl., Exh. H.

On January 21, 1997, plaintiff filed the instant action, claiming defendant Campisi had violated his civil rights by perpetrating the alleged assault, and that the Department of Corrections is likewise liable for its failure to supervise and train defendant Campisi in an adequate manner.

On June 9, 1999, defendants moved for summary judgment. On June 28, 1999, the Court granted summary judgment in favor of defendants, citing plaintiff's failure to oppose defendants' motion. On June 29, the Court learned that plaintiff had sent a letter requesting additional time to file his opposition, but had mistakenly mailed the letter to Judge Eaton's chambers rather than to the Court. Citing plaintiff's *pro se* status, the Court vacated the award of summary judgment, agreed to accept belatedly plaintiff's opposition papers, and directed defendants to submit their reply by September 3, 1999.

On September 9, defendants' motion was fully submitted to the Court. Plaintiff has on three subsequent occasions made further submissions to the Court, which the Court has considered despite the procedural impropriety of these filings.[2] In these submissions, plaintiff draws the Court's attention to the fact that he is illiterate and relies on fellow prisoners to assist him in these proceedings, in addition to the dozen unrelated civil suits he has filed since incarcerated. Plaintiff requests that the Court provide him with counsel to assist him in prosecuting his case, and requests that the Court appoint a guardian *ad litem* because of his illiteracy.

## DISCUSSION

### I. STANDARD FOR SUMMARY JUDGMENT

A moving party is entitled to summary judgment if the Court determines that there exists no genuine issue of material fact to be tried and the party is entitled to judgment as a matter of law. See Fed. R.Civ.P. 56; *see also Holt v. KMI-Continental, Inc.,* 95 F.3d 123, 128 (2d Cir.1996); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995) (citation omitted); *see also Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 81 F.3d 1224, 1231 (2d Cir.1996).

The Court's function in adjudicating a summary judgment motion is not to try issues of fact, but instead to determine whether there is such an issue. *See Sut-*

**2.** The Court notes defendants' objection to its consideration of these submissions, *see* Brauner letter, Oct. 5, 1999, but finds that the Court's obligation to relax procedural strictures for *pro se* litigants justifies defendants' inconvenience, if any, in addressing plaintiff's communications, which the Court gave defendants an opportunity to accomplish. *See* Memorandum Endorsement to Brauner letter, Oct. 12, 1999.

*era v. Schering Corp.,* 73 F.3d 13, 15–16 (2d Cir.1995). In determining whether genuine issues of material fact exist, the Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Holt,* 95 F.3d at 129.

## II. LIBERAL CONSTRUCTION OF PLEADINGS BY *PRO SE* LITIGANT

■ The Supreme Court and the Second Circuit have made abundantly clear that the courts must "construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (internal quotes omitted); *see also Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Ruotolo v. Internal Revenue Serv.,* 28 F.3d 6, 8–9 (2d Cir.1994); *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994).

## III. DEFENDANTS' PROCEDURAL ARGUMENTS FOR DISMISSAL

Although the instant motion is formally one for summary judgment, defendants repeatedly urge the Court to dismiss plaintiff's complaint for his failure to comply with the Federal Rules of Civil Procedure and the rules of this Court. While plaintiff's manner of conducting this litigation has been far from exemplary, the Second Circuit has made it amply clear that district courts " 'should be especially hesitant to dismiss for procedural deficiencies where ... the failure is by a *pro se* litigant.' " *Spencer v. Doe,* 139 F.3d 107, 112 (2d Cir.1998) (quoting *Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.1996)).

As defendants argue, and as the Second Circuit noted in *Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994), a less solicitous approach may be warranted with respect to a litigious inmate who is unarguably acquainted with the procedural requirements of our legal system. In *Davidson,* the Second Circuit held that, while "[u]nder other circumstances, such sparse pleadings by a *pro se* litigant unfamiliar with the requirements of the legal system may be sufficient at least to permit the plaintiff to amend his complaint to state a cause of action .... [t]he plaintiff in the case at bar ... is an extremely litigious inmate who is quite familiar with the legal system and with pleading requirements." *Id.* at 31. Plaintiff at bar has at least ten civil suits pending in the Southern District alone. Thus, while the Court must treat plaintiff's procedural missteps with some measure of leniency, plaintiff's demonstrated familiarity with the judicial system tempers the Court's need to be solicitous. Against this backdrop, the Court considers defendants' procedural arguments in turn.

### A. Incomplete Service of Process on Defendants

Defendants contend that plaintiff's service of process on defendants was incomplete and imperfect. Although proper service of process is integral to the Court's jurisdiction, the Court is satisfied that defendant Campisi and the City of New York have had adequate notice of plaintiff's action against them.

■ Defendants argue that the Department of Corrections (DOC) is not an entity subject to suit. To bring an action against DOC, defendants suggest, plaintiff must amend his complaint to name the City of New York as a defendant, and properly serve the City with process. Because such a procedure would serve only to delay the resolution of this case, and because the appearance of Corporation Counsel in this case leaves no question that the City is aware of the claims against it, the Court will deem plaintiff's claims directed improperly at DOC as claims against the City of New York.

■ Defendant Campisi is also unquestionably aware that he is a defendant in this suit, and what the claims against him entail. The parties differ as to whether

Campisi was properly served with a copy of plaintiff's complaint. Notwithstanding defendants' assertion that Corporation Counsel never made an appearance for defendant Campisi, the Court's records indicate that both Campisi and the City were properly served, and that Corporation Counsel has been engaged in defending these claims in the name of all defendants. Pursuant to Fed.R.Civ.P. 12(h), a defendant must raise the defense of lack of personal jurisdiction or improper service "at the time he makes his first significant defensive move." *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 730 (2d Cir.1998). Although defendants raise these considerations in the instant motion, Corporation Counsel's earlier answer to the complaint appears to speak for both Campisi and the City, and fails to raise the issue of improper service.[3] For these reasons, the Court finds that defendant Campisi is properly a defendant to this action.

### B. Plaintiff's Filing of Unsigned Papers Prepared by Non–Attorney

■ Defendants correctly argue that 28 U.S.C. § 1654 only permits parties to plead their cases "personally or by counsel." Accordingly, defendants urge the Court to disregard opposition papers prepared for plaintiff by fellow inmate Michael Shabazz and submitted without plaintiff's signature, and grant their motion on default. While defendants are correct that Mr. Shabazz is not an attorney and may not in any sense serve as plaintiff's counsel, the Court recognizes that prisoners routinely rely on the assistance of "jailhouse lawyers"—fellow inmates with some education—to aid them in preparing papers for the Court.

In a letter to the Court dated July 26, 1999, Mr. Shabazz stated that he was "personally assisting Mr. Santiago in responding to the summary judgment motion," but that plaintiff was being transferred to another facility yet unknown to him. Shabazz noted that he had already "basically prepared [plaintiff's] response," but was concerned that he would be unable to finalize it before the deadline. Upon receipt of Mr. Shabazz's letter, the Court granted plaintiff an extension until August 31 to file his opposition. On July 27, however, Shabazz mailed plaintiff's opposition papers to the Court, having discovered that plaintiff had already been transferred out of the Shawangunk Correctional Facility in Wallkill, New York, to an unknown location. The Court assumes that when he wrote the Court on July 26 to ask for an extension, Shabazz intended to finalize plaintiff's papers by securing his legal signature. Upon learning on July 27 that plaintiff had already been moved to an unknown location, Shabazz decided to mail the papers without plaintiff's signature.

The Court agrees with defendants that, generally speaking, the unlicensed practice of law and any effort to subvert 28 U.S.C. § 1654 are very serious matters. But in this context, where the Second Circuit has repeatedly ordered the district courts to bend the procedural rules for the benefit of *pro se* litigants, it would appear unseemly and would work an injustice to plaintiff to reject his opposition papers and grant defendants' motion as if unopposed. Given the amount of work obviously involved in preparing plaintiff's opposition papers, the Court cannot seriously doubt that Shabazz was engaged in a genuine effort to assist plaintiff in opposing defendants' motion. Had plaintiff not been transferred to another facility, he would have affixed his

---

**3.** Although the answer purports to be the City's pleading alone, it contains an affirmative defense raised on Campisi's behalf, and Corporation Counsel signs the pleading as "Attorney for Defendants," in the plural. *See* Defs.' Ans. On March 5, 1997, Assistant Corporation Counsel Melanie Smith wrote the Court requesting an extension of time during

which to determine, *inter alia*, "if this office will offer representation to the individual defendant." Although the Corporation Counsel's office now maintains that it never entered an appearance on Campisi's behalf, it also failed to notify the Court whether it had ultimately decided to represent him.

signature to these very papers, and the Court would have accepted them as his submission. To contend that *those* papers would be acceptable, but that the ones actually submitted must be ignored altogether, would be to exalt form over substance and frustrate the manner in which *pro se* litigation by inmates is often conducted. Indeed, to do so might deprive many *pro se* litigants of the only means they have to prosecute their claims. *See, e.g., Lewis v. Casey,* 518 U.S. 343, 360, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (identifying the existence of "jailhouse lawyers" as one means to "prevent the legal harm of denial of access to the courts."); *cf. Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) (declaring unconstitutional state regulations that forbade inmates from assisting other inmates, or seeking the assistance of other inmates, in the preparation of their legal pleadings).

Perhaps most significantly, plaintiff has adopted the pleadings prepared by Mr. Shabazz as his own, referring to and relying upon them in his subsequent submissions. Although defendants contend that these papers "have not been prepared by, or sworn to by, a party to this action or an attorney representing the party," *see* Brauner Reply Decl. at 1, it is clear from plaintiff's subsequent submissions to the Court that plaintiff has adopted the legal arguments contained in his original opposition papers, as prepared by Mr. Shabazz. Defendants correctly argue that Mr. Shabazz may not make declarations of fact in plaintiff's stead, and that the Court should not consider the content of these papers as evidence. *See id.* at 3 (citing Fed.R.Civ.P. 56). For this reason, plaintiff's opposition will be considered by the Court solely for the legal arguments it raises, and not as a proffer of evidence to refute the factual allegations made and supported by defendants in their submissions.

## C. Timeliness of Plaintiff's Pleadings

■ Defendants continue to suggest that plaintiff should be defaulted for his late filing of pleadings in connection with this matter. While a *pro se* litigant does not have *carte blanche* to disregard the Federal Rules or the orders of a court, the Second Circuit authority cited above makes clear that the tardiness of plaintiff's filings—by no more than a few days—is *de minimus* and shall not serve as the basis for dismissal of his complaint.

## IV. PLAINTIFF'S § 1983 CLAIM AGAINST CAMPISI

Plaintiff contends that Campisi's alleged conduct constitutes "cruel and unusual punishment" in violation of the Eighth Amendment to the United States Constitution. Drawing every possible inference in plaintiff's favor, in light of his *pro se* status and the standard for summary judgment, the Court concludes that plaintiff's allegations, even if true, do not establish a viable claim under § 1983. Further, the Court finds that plaintiff has failed to submit adequate evidence to refute defendants' arguments and to demonstrate that his allegations are not fanciful.

### A. Plaintiff Fails to State a Claim for Excessive Force

■ To state a claim under § 1983, plaintiff must establish that (1) the conduct in question deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States, and (2) the conduct complained of was committed by a person acting under color of state law. *See Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Although an excessive force claim by a pre-trial detainee is governed by the due process clause of the Fourteenth Amendment, *see Bell v. Wolfish,* 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Second Circuit applies the same standard to all excessive force claims, whether raised by a prisoner under the Eighth Amendment, or by a pre-trial detainee under the Fourteenth Amendment. *See*

*United States v. Walsh,* 194 F.3d 37, 48 (2d Cir.1999).

■ To establish a claim of cruel and unusual punishment cognizable under the Eighth Amendment, and by reference under § 1983, plaintiff must satisfy a two-part inquiry consisting of both objective and subjective elements. *See, e.g., Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir. 1999). Plaintiff must prove that the alleged wrongdoing was "objectively, sufficiently serious" or "objectively harmful enough" to establish a constitutional violation. *See Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). However, only the use of physical force that is "repugnant to the conscience of mankind" amounts to a constitutional violation. *Whitley v. Albers,* 475 U.S. 312, 327, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Plaintiff must also show that the corrections officer acted wantonly, with sadistic or malicious intent to harm him. *See Hudson v. McMillian,* 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The Supreme Court has made clear, however, that "[t]he Eighth Amendment prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimus* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* (internal quotes omitted).

### 1. Subjective Element of the Excessive Force Test

Assuming plaintiff's allegations to be true, the Court must consider whether the alleged conduct was wanton. "[I]n excessive force cases, the 'wantonness' inquiry turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Blyden,* 186 F.3d at 262 (quoting *Hudson,* 503 U.S. at 7, 112 S.Ct. 995); *see also Davidson v. Flynn,* 32 F.3d 27, 30 (2d Cir.1994).

■ Plaintiff maintains that he was minding his business when the alleged attacks took place. On the first day, he claims that he had requested to use a different bathroom because the one in his area was clogged. On the second day, he maintains that defendant Campisi singled him out to punish him for their altercation the day before. Assuming plaintiff's story to be true, defendant's alleged conduct is clearly unrelated to any "good-faith effort to maintain or restore discipline."

■ Defendants argue that, to satisfy his burden on this subjective element of the two-part test, plaintiff must prove defendant Campisi's malicious and sadistic state of mind. This is clearly incorrect. *"Hudson* does not limit liability to that subset of cases where 'malice' is present." *Blyden,* 186 F.3d at 263. "Rather, *Hudson* simply makes clear that excessive force is defined as force not applied in a 'good-faith effort to maintain or restore discipline.'" *Id.* (quoting *Hudson,* 503 U.S. at 7, 112 S.Ct. 995). The law in this Circuit is clear, therefore, that any use of force other than force applied in good faith to maintain or restore discipline or order, satisfies the so-called subjective prong of the applicable legal standard. As the Second Circuit concluded, "The Court's use of the terms 'maliciously and sadistically' is, therefore, only a characterization of all 'bad faith' uses of force and not a limit on liability for uses of force that are otherwise in bad faith." *Id.*

While the subjective element of the excessive force standard is inherently an inquiry into defendant's state of mind, plaintiff need not offer particular evidence of defendant's mental state. For purposes of opposing defendants' summary judgment motion, plaintiff has satisfied his burden on this element by merely pleading a scenario in which the use of force could not have been in good faith. "When no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." *Boddie v. Schnieder,* 105 F.3d 857, 861 (2d Cir.1997);

*see also Walsh*, 194 F.3d at 50 ("[Defendant] does not, nor could he, challenge that the subjective element is satisfied in this case as there was absolutely no reasonably perceived need for the application of force.")

### 2. Objective Element of the Excessive Force Test

■ Although plaintiff's allegations satisfy the subjective element of the excessive force test, plaintiff must also demonstrate that the alleged conduct rises to the level of a violation of his constitutional rights. The Court finds that it does not.

■ The Supreme Court in *Hudson* broadened the scope of cognizable excessive force claims by eliminating any requirement that a plaintiff demonstrate "serious" or "significant" injury to succeed on such a claim. To satisfy the objective test for excessive force, a plaintiff need only allege conduct that violates "contemporary standards of decency." *Hudson*, 503 U.S. at 8, 112 S.Ct. 995. However, "certain actions, including the malicious use of force to cause harm, constitute Eighth Amendment violations per se." *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9, 112 S.Ct. 995). This result follows because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9, 112 S.Ct. 995.

The *Hudson* Court made clear, however, that its relaxation of "serious" and "significant" injury requirement would *not* expand Eighth Amendment rights so far as to proscribe *de minimus* use of force by corrections officers. *De minimus* force constitutes a violation of the Eighth Amendment *only* if it is " 'repugnant to the conscience of mankind.' " *Walsh*, 194 F.3d at 49 (quoting *Hudson*, 503 U.S. at 9–10, 112 S.Ct. 995). *Hudson* provides the courts with little guidance as to how to distinguish the lawful, *de minimus* exercise of force from the Supreme Court's newly-created class of unconstitutional, excessive force that is more than *de minimus*, but not so "serious" or "significant" that it would necessarily leave a trace. Although the Second Circuit has not had occasion to clarify this distinction, it has noted in passing its agreement "with other circuits that some degree of injury is ordinarily required to state a claim after *Hudson.*" *Walsh*, 194 F.3d at 50 (citing *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir.1994); *Cummings v. Malone*, 995 F.2d 817, 822–23 (8th Cir.1993); *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir.1993)).

The Court finds that Campisi's alleged conduct, if true, would constitute *de minimus* physical contact not cognizable under the Eighth Amendment or, accordingly, under § 1983. Although the Court does not condone unprovoked violence by corrections officers against their charges, it is well established in this Circuit that " '[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.' " *Boddie*, 105 F.3d at 862 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)).

In the instant case, there is no medical evidence that plaintiff sustained any physical injury as a result of the alleged assault by defendants. Following the Second Circuit's decision in *Walsh*, this alone may be enough to dismiss plaintiff's claim. *See Walsh*, 194 F.3d at 50. However, it is also clear under the law of this Circuit that an open-handed slap—the most severe contact alleged by plaintiff—is not sufficiently "repugnant to the conscience of mankind" to give rise to an Eighth Amendment claim. *See Boddie*, 105 F.3d at 861 (bumping, grabbing, elbowing, and pushing plaintiff was *de minimus* use of force); *see also, e.g., Yearwood v. LoPiccolo*, 1998 WL 474073 at *7 (S.D.N.Y. Aug. 10, 1998) (choking plaintiff, hitting his head with a pair of keys, and punching him in the lip constituted *de minimus* force); *Johnson v. Renda*, 1997 WL 576035 at *1 (S.D.N.Y. Sep. 15, 1997) (a single, spontaneous slap to plaintiff's face insufficient to establish

constitutional violation); *Shabazz v. Pico,* 994 F.Supp. 460, 471 (S.D.N.Y.1998) (kicking inmate's ankles and feet was *de minimus* ); *DeArmas v. Jaycox,* 1993 WL 37501 at *4 (S.D.N.Y. Feb. 8, 1993), *aff'd,* 14 F.3d 591 (2d Cir.1993) (punching inmate in arm and kicking him in leg constituted *de minimus* force).

Accordingly, for plaintiff's failure to allege facts that, if true, could satisfy the objective element of the excessive force standard, defendants are entitled to summary judgment on his § 1983 claim.

**B. Plaintiff's Failure to Satisfy the Requirements of Fed.R.Civ.P. 56(e)**

 While the foregoing conclusion alone requires entry of judgment in defendants' favor, defendants are likewise entitled to judgment for plaintiff's failure to offer even a scintilla of evidence to counter defendant's motion. *See* Fed.R.Civ.P. 56(e). While the Court must assume the facts alleged by plaintiff, his action cannot survive summary judgment on naked allegations alone. Plaintiff, notwithstanding his frequent and verbose submissions to the Court, has made no offer of credible proof to controvert the arguments and evidence offered by defendants. Indeed, the uncontroverted records of the detention facility show that defendant Campisi was assigned to an entirely different area of the facility on the dates in question, and medical records reveal that plaintiff did not complain of, or exhibit, any injuries at a medical examination conducted shortly after the first alleged assault. The Second Circuit has held in this context that while "the moving party must show there are no material factual disputes[,] at the same time, the non-moving party may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that 'its version of the events is not wholly fanciful.'" *Morris v. Lindau,* 196 F.3d 102, 109 (2d Cir.1999) (quoting *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d

Cir.1998)); *see also Gant v. Wallingford Bd. of Educ.,* 195 F.3d 134, 144 (2d Cir. 1999). Even with the benefit of full discovery, taken from defendants with the aid of the Honorable Douglas F. Eaton, United States Magistrate Judge, plaintiff has failed to offer even the slightest proof to controvert the appearance that his story is fabricated. Thus, while the Court must assume the facts of the non-moving party, summary judgment is appropriate where the non-moving party bears the burden of proof at trial, and fails to controvert the moving party's claims on summary judgment with an offer of appropriate evidence. *See, e.g., Hellstrom v. United States Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir.2000); *see also* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.")

**V. PLAINTIFF'S § 1983 CLAIM AGAINST THE CITY OF NEW YORK**

 As discussed, *supra,* the Court finds that the City of New York has had adequate notice of the claims brought against it in the name of Department of Corrections (DOC). Nonetheless, plaintiff's claim against the City of New York must fail. In order to state a claim against a municipality or municipal agency, plaintiff must present evidence that the alleged deprivation of his constitutional rights was caused by an official custom, policy or practice. *See Monell v. Dep't of Soc. Serv. of the City of New York,* 436 U.S. 658, 691–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Krulik v. Bd. of Educ. of the City of New York,* 781 F.2d 15, 23 (2d

676

Cir.1986). A single incident of unconstitutional activity is insufficient to infer a custom, policy or practice as required by *Monell* to impose municipal liability. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993). Because plaintiff has offered no evidence that the alleged conduct was the result of an official custom, policy or practice, he fails to state a claim against the City. Although it is clear as a matter of law that "under *Monell* municipal liability for constitutional injuries may be found to exist even in the absence of individual liability," this is only the case when "the injuries complained of are not *solely* attributable to the actions of named individual defendants." *Barrett v. Orange County Human Rights Comm.*, 194 F.3d 341, 350 (2d Cir.1999) (emphasis added); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 798–99, 106 S.Ct. 1571. Plaintiff offers no evidence that the Campisi's alleged conduct was in any way attributable to the City, and thus his claim against the City cannot stand.

## VI. PLAINTIFF'S CLAIMS FOR DAMAGES FOR MENTAL AND EMOTIONAL DISTRESS

Although plaintiff has not formally made a claim for damages for emotional distress, defendants address the suggestion in some of plaintiff's submissions that the alleged assault caused him "stress" or intensified his depression.

The Court agrees with defendants that, to the extent plaintiff intends to claim these sorts of damages, they are subject to review under 42 U.S.C. § 1997e(e), as amended by the Prison Litigation Reform Act of 1996. Section 1997e(e) reads, in relevant part: "[N]o federal action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

As the Court has discussed, *supra*, plaintiff has failed to offer any evidence to suggest that he sustained a physical injury as a result of the alleged assaults. Moreover, plaintiff has offered nothing to rebut defendants' evidence to the effect that doctors who examined plaintiff found no indication that he had sustained an injury to his face. Nor does he offer evidence to refute the inference drawn by defendants from plaintiff's failure to report the assaults for ten days, or at either of two separate medical examinations he underwent in that time, during which no injuries were reported or observed.

Accordingly, plaintiff is barred by 42 U.S.C. § 1997e(e) from claiming damages for emotional or mental injury as a result of the alleged assaults.

## VII. REQUEST FOR APPOINTMENT OF COUNSEL OR GUARDIAN *AD LITEM*

In letters dated October 29 and November 17, 1999, plaintiff urges the Court to appoint counsel to represent him in prosecuting this case. Although the Court's dismissal of plaintiff's action renders his request for counsel moot, the Court shall endeavor to explain briefly why it would otherwise deny plaintiff's meritless request, as well as his belated request for the appointment of a guardian *ad litem*.

Plaintiff's November 17 letter conflates issues from the criminal context—namely, considerations of effectiveness of assistance of counsel—with the operative issue here, *i.e.*, whether a *pro se* § 1983 plaintiff is entitled to court-appointed, and court-funded, legal counsel. Under 28 U.S.C. § 1915(d), it is clear that district courts have broad discretion regarding the appointment of counsel for indigent litigants.

In *Hodge v. Police Officers*, 802 F.2d 58 (2d Cir.1986), the Second Circuit clarified the issues a district court should consider in exercising its discretion in this area. In *Hodge*, the Second Circuit held that " '[t]he district judge should first de-

termine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination.'" *Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge,* 802 F.2d at 61–62).

As the Second Circuit observed in *Cooper v. A. Sargenti Co.,* 877 F.2d 170, 172 (2d Cir.1989), "Even where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim.... If mere bald assertions by an indigent, which technically put a fact in issue and suffice to avert summary judgment, required appointment of an attorney under § 1915(d), the demand for such representation could be overwhelming." (internal quotes omitted).

██ The Court finds that plaintiff fails to meet the threshold requirement of *Hodge* that his position "seem[ ] likely to be of substance." Therefore, it would be a futile exercise and a misallocation of resources to appoint plaintiff an attorney to assist him with this cause. Moreover, it seems unlikely that plaintiff would satisfy any of the remaining *Hodge* factors, given that Judge Eaton has amply assisted him in drafting and serving interrogatories on defendants, and given that the law governing plaintiff's claim is not in serious dispute.

██ Finally, plaintiff's much-belated request for appointment of a guardian *ad litem* pursuant to Fed.R.Civ.P. 17(c) is likewise denied. Plaintiff is not a minor, nor is he incompetent in the sense contemplated by Rule 17(c). Plaintiff goes to great pains to convince the Court that he is illiterate, and that his legal papers are prepared for him by "jailhouse lawyers," which the Court does not doubt. But plaintiff mistakenly equates his illiteracy with incompetence, an argument supported neither by logic nor law. Moreover, the Second Circuit has held that Rule 17(c) is "permissive and not mandatory." *Ad Hoc Comm. of Concerned Teachers v. Greenburgh No. 11 Union Free School Dist.,* 873 F.2d 25, 29 (2d Cir.1989). As the Court has found no legal authority to support plaintiff's contention that his illiteracy renders him legally incompetent, and as the Court believes his cause to be without merit, appointment of a guardian *ad litem* would be inappropriate under any standard.

### CONCLUSION

For the reasons stated herein, defendants' motion for summary judgment is hereby GRANTED. The Clerk of Court is directed to dismiss plaintiff's complaint in its entirety. Plaintiff's requests for appointment of counsel or a guardian *ad litem* are DENIED.

**SO ORDERED.**