**Ahmad PERKINS, Plaintiff,**

v.

**Ronald Lee BROWN, Alex Pena, Captain Robert Rigobello, Eugene Slevin, and Jamie Justiniano, Defendants.**

**No. 99 CV 4506(NG).**

United States District Court, E.D. New York.

Aug. 26, 2003.

Ahmad Perkins, Brooklyn, NY, Pro se.

Lawrence O. Kamin, Mary Theresa O'Flynn and Frances Sands, New York City, for defendant.

### OPINION AND ORDER

GERSHON, District Judge.

Plaintiff, Ahmad Perkins, who is appearing *pro se*, brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants, Ronald Brown Lee (incorrectly identified in the caption as Lee Brown), Alex Pena, Robert Rigobello, Eugene Slevin, and Jamie Justiniano, all of whom are officers with the New York City Department of Correction ("DOC"), used excessive force in conducting a search of him while he was inside a holding cell at the Brooklyn Criminal Courthouse. Additionally, plaintiff alleges that defendants failed to provide him with adequate medical treatment following the incident. Defendants move for summary judgment pursuant to Fed.R.Civ.P. 56(c).

### Facts

The following facts are not disputed unless otherwise indicated. On April 21, 1998, plaintiff was transferred from the North Infirmary Command at Rikers Island prison to the Brooklyn Criminal Courthouse to attend a court proceeding unrelated to the crimes for which he was then incarcerated. Pending his court appearance, the DOC placed him in a "red ID" holding cell, which is reserved for prisoners who are considered security risks. Plaintiff, because of his status as a gang member and "predicate slasher" fell within this category. While in the holding cell, defendant Brown Lee, who was familiar with plaintiff, and the other defendants ordered plaintiff to submit to a strip search as he had on other occasions. Plaintiff refused to comply with defendant Brown Lee's directions and an argument ensued. As a result of this argument plaintiff claims two instances of excessive force. The first instance of excessive force is alleged to have occurred after defendants and plaintiff, in plaintiff's words, were "going back and forth for a little while" regarding plaintiff's refusal to be searched, and defendant Slevin picked plaintiff up and held him while defendants Brown Lee and Justiniano took his clothes off. Plaintiff claims that, while defendants were conducting the search, they tried to provoke him verbally and by pushing him. Plaintiff responded by continuing to verbally abuse defendants and "trying to push them off me."

Plaintiff's second claim of excessive force allegedly occurred following the search. After plaintiff was dressed, defendants transported him in handcuffs to another cell. Plaintiff claims that on the way to the second cell, the argument continued, and defendants began punching him. When he was placed in the second cell, a female captain told him that he was being

charged with assault for trying to cut the officers and that they had his razor. Plaintiff claims that the razor was not his because he had only brought one razor which was still on him (in his body).

Following this incident the female captain took plaintiff to the courthouse infirmary where his injuries were documented in an "Injury to Inmate Report." The report states that plaintiff had suffered a "small superficial laceration in lower inner lip" and reports no other injury or "visible bruises." Plaintiff signed the report indicating that it accurately set forth the cause of plaintiff's injury and that he received medical attention. Plaintiff now claims that he did not receive medical attention and that he had received injuries to his lip, nose, eye, fingers, wrists, jaw, and chest. Plaintiff admits that he did not seek medical attention for his lip or jaw because "those type of bruises, I feel they will heal. It's nothing major." Plaintiff claims that he requested to go to the clinic at Rikers Island for chest and back pains numerous times, but was never taken. Plaintiff was transferred later to Downstate Correctional Facility, where he was seen by a doctor and given treatment unrelated to his alleged injuries.

Plaintiff also claims that he occasionally has chest pains in the middle of his chest and under his armpit. After being transferred to Bordentown, a facility in New Jersey, plaintiff received Motrin for his pain. Plaintiff claims that the doctors at Northern State, where he was next transferred, informed him that the chest pain may relate to his digestive system or from "working out," and in any event, that pain ceased occurring after plaintiff began taking Pepto–Bismol. Plaintiff also alleges that, as a result of the incident on April 21, 1998, he is losing his hair and "I think about a lot of things," which he characterizes as a "stress disorder."

## Standard for Summary Judgment

A motion for summary judgement is properly granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995). The burden is on the moving party to demonstrate that there are no material facts genuinely in dispute. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir.2000). In deciding a motion for summary judgement, the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *Howley v. Town of Stratford*, 217 F.3d 141, 150–151 (2d Cir. 2000); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must produce specific facts sufficient to establish that there is a genuine factual issue for trial. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548. A motion for summary judgment cannot therefore be defeated by "mere speculation or conjecture." *Giordano v. City of New York*, 274 F.3d 740, 749–50 (2d Cir. 2001).

Where a *pro se* litigant is involved, "the court has an obligation to read [the *pro se* party's] supporting papers liberally, and ... interpret them to raise the strongest arguments they suggest." *Thomas v. Keane*, 2001 WL 410095, at *8 (S.D.N.Y. 2001) (citation omitted); *see Soto v. Walker*, 44 F.3d 169, 173 (2d Cir.1995) (*citing Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). "[B]ald assertions," however, cannot overcome a motion for summary judgment, even if the opposing party is pro se. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991); *Vondette v. McDonald*, 2001 WL 1551152, at *8 (S.D.N.Y.2001). Plain-

tiff must provide the court with "some basis to believe that his version of relevant events is not fanciful." *Yearwood v. Lo-Piccolo,* 1998 WL 474073, at *7 (S.D.N.Y.1998)(*quoting Christian Dior–New York, Inc. v. Koret, Inc.,* 792 F.2d 34, 38 (2d Cir.1986)).

### Excessive Force

■ To state a Section 1983 claim, a plaintiff must allege that defendant, while acting "under color of state law," deprived plaintiff of his constitutional or statutory rights. *Am. Mfrs. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999); *see* 42 U.S.C. § 1983. To be liable under Section 1983, a defendant must have been personally involved in the alleged violation. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *Morris v. Eversley,* 205 F.Supp.2d 234, 241 (S.D.N.Y.2002). "In addressing an excessive force claim brought under [42 U.S.C.] § 1983, [the] analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Here, plaintiff was in the Brooklyn Criminal Courthouse for an appearance on a pending criminal matter. Accordingly, plaintiff will be treated as a pre-trial detainee, not as an inmate, even though he was serving a sentence of imprisonment at the time of the incidents.

■ While the Eighth Amendment's protection from cruel and unusual punishment does not apply "until after conviction and sentence," *Graham,* 490 U.S. at 392 n. 6, 109 S.Ct. 1865, the right of a pretrial detainee to be free from excessive force amounting to punishment is protected by the Due Process Clause. *United States v. Walsh,* 194 F.3d 37, 47 (2d Cir.1999). And, the analysis provided by the Supreme Court in *Hudson v. McMillian,* 503 U.S. 1,

112 S.Ct. 995, 117 L.Ed.2d 156 (1992), that requires a sentenced prisoner to satisfy both an objective and a subjective prong to establish an Eighth Amendment violation also applies to excessive force claims brought by a pretrial detainee. *Walsh,* 194 F.3d at 48 (citing *Hudson,* 503 U.S. at 7–8, 112 S.Ct. 995 (1992)).

■ Plaintiff must show that the alleged use of force is "objectively sufficiently serious or harmful enough" to be actionable. *Walsh,* 194 F.3d at 50 (citing *Hudson,* 503 U.S. at 8, 112 S.Ct. 995). Not "every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324, (1973); *See Walsh* 194 F.3d at 48. However, a claim of excessive force may be established even if the victim does not suffer serious or significant injury, if plaintiff can demonstrate that the amount of force used is more than *de minimis,* or, otherwise involves force "repugnant to the conscience of mankind." *Walsh,* 194 F.3d at 47 (citing *Hudson,* 503 U.S. at 9–10, 112 S.Ct. 995).

■ The subjective requirement is satisfied if the defendant acted wantonly with a "sufficiently culpable state of mind." *Walsh,* 194 F.3d at 49–50 (citing *Hudson,* 503 U.S. at 8, 112 S.Ct. 995); *see also Sims v. Artuz,* 230 F.3d 14 (2d Cir.2000). Where a state official is accused of using excessive physical force against a pretrial detainee, the inquiry turns on "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Walsh,* 194 F.3d at 48–49.

■ Plaintiff alleges that defendants struck him several times and as a result he

suffered a broken lip, swollen nose, eye, fingers, and wrists, jaw pain, chest bruising, and "stress disorder." However, the medical records of examinations performed in the aftermath of the incident show that any force used by defendants was *de minimis*.

Plaintiff submits no evidence of his alleged injuries other than his testimony about them. In his complaint plaintiff does not list any of these injuries, and the only documentation of any injury are in plaintiff's "Injury to Inmate Report." As stated above, this report lists only a minor cut on plaintiff's lip and no other injury. Plaintiff's reasons for lack of documentation regarding his injuries undermine both his allegations that they are a result of the incident and that they amount to anything beyond *de minimis*. Regarding his swollen eye, nose and lip plaintiff admits, "I never complain about bruises like that. I feel it's not important." Plaintiff discloses that the pain in his jaw is "nothing major," and he has had it before. Regarding his back pain, plaintiff claims it is "nothing serious," and that it was sore "like I worked out." Plaintiff admits that his only continuing medical problems to date include headaches which he believes are related to eye problems and chest pains, which he states are "not an ongoing pain [and] will come once in a blue." Additionally, plaintiff states that once he began taking Pepto–Bismol, his chest pain has ceased. Plaintiff also concedes that there is nothing he was able to do before the incident that he cannot do now. Lastly, although plaintiff alleges that he has a continuing "stress disorder," this problem is not documented by any evidence beyond plaintiff's complaints. Accordingly, I conclude that the record indicates, as a matter of law, that the force used was *de minimis*.[1] Plaintiff has pointed to no evidence that shows otherwise.

In addition, the force used was clearly not "repugnant to the conscience of mankind." Defendants used force to search plaintiff only after plaintiff had refused to submit to a search and directed profanity at defendants. The authorized use of force to perform a search of a dangerous individual and to ensure order within a courthouse is outside what has been deemed to be "repugnant to the conscience of mankind."[2] As indicated by the medical records, plaintiff suffered no serious or

---

1. *Compare Hudson v. McMillian*, 503 U.S. at 10, 112 S.Ct. 995 ("bruises, swelling, loosened teeth, and a cracked dental plate are not *de minimis*") with *Cunningham v. Rodriguez*, 2002 WL 31654960 (S.D.N.Y.2002)(blows to back and face held to be *de minimis*); *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir.1997) (bumping, grabbing, elbowing, and pushing plaintiff was *de minimis*); *Espinal v. Goord*, 2001 WL 476070 at *53 n. 46 (S.D.N.Y. May 7, 2001) (injuries held to be *de minimis* where plaintiff was hit in the face two or three times, requiring summary judgment); *Bove v. New York City*, 1999 WL 595620, at *6 (S.D.N.Y. Aug. 6, 1999) (summary judgment where only injury supported by evidence was single bruise to head); *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir.1998) (pretrial detainee's injuries held *de minimis* where medical records do not support plaintiff's purported injuries), *cert. denied*, 525 U.S. 1181, 119 S.Ct. 1121, 143 L.Ed.2d 115 (1999).

2. *Compare Walsh*, 194 F.3d at 50 (a 300 to 400 pound prison guard stepping on inmate's penis was unequivocally contrary to "contemporary standards of decency" and "repugnant to the conscience of mankind") with *Barratt v. Joie*, 2002 WL 335014, at *10–11 (S.D.N.Y. Mar. 4, 2002) (a single kick, unaccompanied by any competent evidence of significant injury, is not repugnant); *Santiago v. C.O. Campisi Shield No. 4592*, 91 F.Supp.2d 665, 674 (S.D.N.Y.2000) (an open-handed slap in the face not repugnant); *Yearwood v. LoPiccolo*, 1998 WL 474073, at *7 (S.D.N.Y.1998)(allegations that plaintiff was choked, hit in the head with a pair of keys, and punched him in the lip were not substantiated by medical records, and not repugnant).

significant injuries. Thus, plaintiff has failed to meet the objective prong of the *Hudson* test.

Even if plaintiff could satisfy the objective prong of the *Hudson* test, no reasonable jury could find on the evidence before the court that defendants acted wantonly with a sufficiently culpable state of mind.

Plaintiff was brought to the Brooklyn Criminal Courthouse as a defendant in a criminal proceeding. Plaintiff was a known gang member who had a history of violent behavior and had previously slashed another inmate with a razor while in the presence of defendant Brown Lee. Plaintiff admits that he is a gang member, that he always carries a razor with him when he goes to court and that he had a razor on him the day in question. Plaintiff's claim that, although it was normal procedure to strip for a search, it was not normal procedure to do so in front of five officers, does nothing to mitigate the necessity of the search. Plaintiff refused to peaceably consent to a search, despite repeated warnings, and created the situation in which defendants had no choice but to forcibly search him. Following the search plaintiff admits verbally abusing defendants. In these circumstances, it is evident that the use of force was not wanton or malicious, but an authorized and good faith effort to restore discipline and to gain control over a recalcitrant defendant. Furthermore, there is no evidence to support plaintiff's contentions that defendants behaved in a "malicious and sadistic" manner because "they had it in for [him]" because he was a "troublemaker to them."[3] *See Giordano,* 274 F.3d at 749–50 (dismissing case where plaintiff provided no evidence to support claims beyond his own "speculations and conjecture").

Thus, plaintiff has failed to present evidence from which a reasonable jury could find that defendants had the requisite culpability under the subjective prong of the *Hudson* excessive force test to subject them to liability.

■ Plaintiff also alleges that, in connection with the excessive force claim, defendants withheld medical treatment. In order to state a cognizable claim for denial of medical treatment, plaintiff "must allege acts or omissions sufficiently harmful to evidence a deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *see also Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) ("official custodian of pretrial detainees may be found liable ... if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need"); *Liscio v. Warren,* 901 F.2d 274, 276–77 (2d Cir.1990). Plaintiff's injuries neither fall under the category of "serious medical needs," nor is there is any indication that defendants showed a "deliberate indifference" toward those needs.

■ Plaintiff's testimony repeatedly indicates that he believed his injuries to be insignificant and therefore he cannot demonstrate that his injuries rose to the level of "serious medical needs." However, even assuming his injuries were serious enough to warrant medical attention, plaintiff admits that he was brought to the court infirmary shortly after the incident. At that time, an "Injury to Inmate Report" was prepared which indicated what injury he sustained (a minor cut), what treatment was provided, and that plaintiff agreed the report was accurate. Although plaintiff

---

**3.** This refers to fights plaintiff had with other inmates, and other "trouble," such as flooding the cells.

also alleges that he asked for, and was denied, medical attention upon being returned to prison, defendants named in this action were not responsible for ensuring that plaintiff received medical treatment while he was outside of their control. *See McAllister v. New York City Police Dep't.*, 49 F.Supp.2d 688, 701 (S.D.N.Y.1999)(granting summary judgment where there was no indication that named defendants were aware of plaintiff's request for medical attention). Indeed, it is undisputed that defendants provided plaintiff with prompt medical attention as indicated by the Injury to Inmate Report. As plaintiff has neither demonstrated that he had serious medical needs nor that defendants were deliberately indifferent towards them, his claim that defendants withheld medical treatment must be dismissed.

### Conclusion

Defendants' motion for summary judgment is granted in its entirety. The Clerk of Court is directed to enter judgment for defendants.

**SO ORDERED.**