**Champ HALLETT, Plaintiff,**

v.

**NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES, et al., Defendants.**

**No. 99Civ.5853(DC).**

United States District Court, S.D. New York.

Aug. 14, 2000.

Amy I. Kroe, New York, New York, for Plaintiff.

Eliot Spitzer, Attorney General of New York, By Jose L. Velez, New York, New York, for Defendants.

## OPINION

CHIN, District Judge.

Plaintiff Champ Hallett ("Hallett") brings this action for declaratory, injunctive, and compensatory relief alleging that while he was incarcerated in the custody of the New York State Department of Correctional Services ("DOCS"), first in Elmira Correctional Facility ("Elmira") and then in Green Haven Correctional Facility ("Green Haven"), defendants denied him access to special programs because of his status as an HIV-positive amputee. Hallett alleges that these denials violated the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* (1999) (the "ADA"), § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1999) (the "Rehabilitation Act"), and the New York State Human Rights Law, N.Y. Exec. § 290, *et*

*seq.* (1999). Hallett further alleges that the defendants denied him proper medical care in violation of the Eighth Amendment of the United States Constitution and state law.

Defendants move to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) on the grounds that: (1) plaintiff failed to exhaust his administrative remedies; (2) DOCS is immune from suit; (3) plaintiff fails to state a claim upon which relief may be granted; (4) certain of the defendants were not personally involved in the alleged violations; and (5) all defendants are entitled to qualified immunity. In the event that only that portion of the case relating to Elmira survives the motion to dismiss, defendants move to transfer the case to the Northern District of New York. For the reasons stated herein, the motion to dismiss is granted in part and denied in part. Because issues relating to Green Haven survive the motion to dismiss, I do not reach defendants' alternative motion to transfer venue.

## BACKGROUND

The facts as alleged by plaintiff in his amended complaint are as follows.

### A. Denial of Admission to Elmira's Shock Incarceration Program and Green Haven's Work Release Program

Hallett was an inmate at Elmira, in Chemung County, New York, from May 20, 1997 to September 17, 1997, and at Green Haven, in Dutchess County, New York, from September 17, 1997 to March 2, 2000. (Am.Compl.¶ 4). While incarcerated at Elmira, Hallett was denied admission to the facility's shock incarceration program, a six month program "consisting of physical training, military style drilling, working, educational classes, and counseling." (Am. Compl.¶ 15). Inmates who complete the

shock incarceration program are "eligible for parole release" and are awarded a certificate that assists them with obtaining parole. (Am.Compl.¶¶ 15–16). Officials at Elmira, including Acting Deputy Superintendent J. Crowley ("Crowley"), "acknowledged that [Hallett] 'technically' met the qualifications of the [shock incarceration] program," but denied him entrance into the program because of his physical disability—partial loss of his right leg requiring the use of a wheelchair—and his HIV-positive status. (Am.Compl.¶ 20). Hallett filed grievances concerning his rejection from the shock incarceration program but they were denied by both Floyd G. Bennett ("Bennett"), Superintendent of Elmira, and the Central Office Review Committee (the "CORC"). (Am.Compl.¶ 21).

On September 17, 1997, Hallett was transferred from Elmira to Green Haven. Officials at Green Haven "repeatedly reviewed" Hallett for admission to the facility's work release program, which allows eligible inmates to leave the correctional facility to work or to gain on-the-job training. (Am.Compl.¶¶ 14, 22). Despite meeting all of the program's qualifications, Hallett was denied admission into the program because of his physical disability by the Chairperson of the Temporary Release Committee [1] at Green Haven and Christopher Artuz ("Artuz"), Superintendent of Green Haven. (Am.Compl.¶ 23). Indeed, Hallett alleges that Charles Bendheim ("Bendheim"), supervising physician for the Unit for Physically Disabled at Green Haven, "repeatedly stated" that Hallett should be denied admission into the program "because he was 'unsuitable for participation' or 'ineligible' because [he] was a 'traumatic amputee' and physically disabled." (Am.Compl.¶ 24).

Hallett filed grievances concerning his repeated denials of admission into the work release program. The denials were

---

1. Plaintiff has not identified the Chairperson of the Temporary Release Committee. Nevertheless, defendants' counsel indicated at oral argument that the Attorney General's Office has accepted service on his behalf. (*See* Transcript of Oral Argument, dated July 11, 2000, ("Tr.") at 7).

"upheld" by prison officials, including but not limited to Artuz. (Am.Compl.¶ 25). Hallett appealed Artuz's decision denying him admission to the work release program to Glenn Goord ("Goord"), Commissioner of DOCS. On September 15, 1998, Goord upheld Artuz's decision. On January 26, 1999, more than a year after plaintiff was transferred from Elmira to Green Haven, plaintiff received a "pretextual denial of admission" to the shock incarceration program based on his "criminal history, absconding from probation, unsatisfactory disciplinary adjustment and public risk." (Am.Compl.¶ 27).

## B. *Denial of Necessary Medical Care at Green Haven*

Hallett is able to enter and exit a wheelchair without "great difficulty" as long as the wheelchair has either a fixed frame or movable foot and arm rests. (Am.Compl.¶ 29). Hallett owns a personal fixed frame wheelchair that accommodates his medical needs. He was permitted to use his personal wheelchair for his entire term of incarceration at Elmira and for the first seven months of his stay at Green Haven. (Am.Compl.¶ 33).

In March 1998, Hallett was apparently told by Green Haven officials that the metal rims and spokes of his personal wheelchair posed a security risk. In response to the correctional facility's concerns, on March 16, 1998, Hallett requested that Green Haven nurse Elizabeth Weber ("Weber") authorize the purchase of plastic parts that would conform to security standards. (Am.Compl.¶¶ 35–36). Weber refused to authorize the replacement parts but did not confiscate Hallett's wheelchair. (Am.Compl.¶ 36). On March 25, 1998, Hallett filed a grievance "concerning the denial of adequate medical care." (Am.Compl.¶ 37). On April 9, 1998, Hallett again requested that Weber modify the wheelchair. Weber refused Hallett's sec-

ond request and "misled other officials by informing them that personal wheelchairs were not repaired at Green Haven." [2] (Am.Compl.¶¶ 38–39). Weber, Norman Selwin ("Selwin"), the Medical Director of Green Haven, and Artuz then confiscated Hallett's wheelchair, providing him instead with a "standard-issue" DOCS wheelchair that had neither a fixed frame nor movable foot and arm rests. (Am.Compl.¶¶ 31, 38–40). Hallett had "great difficulty entering and exiting" the issued wheelchair. (Am. Compl.¶ 31). The exertions required to get in and out of the wheelchair caused Hallett severe back pain; once Hallett fell and cut his head trying to exit his wheelchair. (Am.Compl.¶ 45).

On April 9, 1998—the same day his wheelchair was confiscated—Hallett filed a grievance regarding the confiscation but "[d]efendants ... refused to return [his] personal wheelchair." (Am.Compl.¶ 41). On April 21, 1998, Hallett filed another grievance, this time concerning Bendheim's refusal to treat the severe back pain Hallett developed from using the inadequate wheelchair. (Am.Compl.¶¶ 46–47). Hallett also filed "complaints" with Goord, Selwin, and Lawrence Zwillinger, the Regional Health Services Administrator of Green Haven, and a grievance against Weber regarding his inadequate medical treatment. The amended complaint does not indicate the dates of these filings. (Am.Compl.¶¶ 42–43).

At some point thereafter, Hallett complained—it is unclear to whom—that denial of his wheelchair constituted inadequate medical care "in relation to the Milburn Consent Decree." (Am.Compl.¶ 44). On September 10, 1998, Green Haven returned Hallett's personal wheelchair. The amended complaint does not indicate whether the wheelchair was modified to conform to safety standards.

**2.** Hallett alleges that Green Haven "has a custom and practice of fixing and repairing personal wheelchairs." (Am.Compl.¶ 34).

## DISCUSSION

### A. Mootness

█ Hallett was released from prison on March 2, 2000. (Pl. Opp. Mem. at 2 n. 1). Because he is no longer incarcerated and under the supervision of any of the named defendants, his requests for injunctive relief are dismissed as moot. *See Gadson v. Goord,* No. 96 Civ. 7544, 1997 WL 714878, at *3 (S.D.N.Y. Nov. 17, 1997) (citing *Iron Arrow Honor Soc'y v. Heckler,* 464 U.S. 67, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983)). Indeed, in his opposition papers, Hallett acknowledges that "injunctive relief is not an appropriate remedy." (Pl. Opp. Mem. at 2 n. 1). Hallett further indicated, through counsel at oral argument, that he is no longer seeking declaratory relief. (*See* Tr. at 5). Accordingly, I review plaintiff's claims only to the extent they seek monetary damages.

### B. Motion to Dismiss Standard

In reviewing a motion to dismiss, I must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). A complaint may not be dismissed under Fed.R.Civ.P. 12(b)(6) unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In other words, the issue before the Court on a motion to dismiss "is not whether ... plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (citation omitted), *cert. denied,* 519 U.S. 808, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996).

### C. Failure to Exhaust Administrative Remedies

█ Defendants concede that as to plaintiff's claim alleging denial of access to Elmira's shock incarceration program plaintiff has exhausted his administrative remedies and the claim is ripe for review. Defendants contend, however, that the remainder of the amended complaint should be dismissed because plaintiff has failed to exhaust his administrative remedies as required by the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(a) (1999) (the "PLRA"). Section 1997e(a) of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

Hallett alleges that he filed and appealed grievances concerning his denial of admission to the work release program and his receipt of inadequate medical care, but the amended complaint does not explicitly allege that those grievances were appealed to and denied by the CORC for "final administrative determination." *See Hernandez v. Greiner,* No. 99 Civ. 4601, 2000 WL 520639, at *2 (S.D.N.Y. May 1, 2000) (citing N.Y. Comp.Codes R. & Regs. tit. 7, § 701.7). Nevertheless, in his opposition papers, Hallett does contend that he "appealed the results of [his] grievances to the Superintendent and to the [CORC] with respect to all of his claims." (Pl. Opp. Mem. at 6–7).

█ I reject defendants' exhaustion arguments for the following reasons. First, in the Second Circuit, failure to comply with the PLRA's exhaustion requirement is viewed as an affirmative defense. *See Jenkins v. Haubert,* 179 F.3d 19, 28–29 (2d Cir.1999) ("[A] defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements."). Accordingly, defendants bear the burden of proving plaintiff's failure to comply with the PLRA's exhaustion requirement. *See Gonzalez v. Officer in Charge of Barber Shop,* No. 99 Civ. 3455, 2000 WL 274184,

at *3 (S.D.N.Y. Mar. 13, 2000) (noting that defendant has burden to prove affirmative defense of lack of exhaustion); *Howard v. Goord,* No. 98 Civ. 7471, 1999 WL 1288679, at *2–3 (E.D.N.Y. Dec. 28, 1999) (same). In the face of plaintiff's allegations that he exhausted his administrative remedies, defendants have provided only conclusory statements and have thus failed to meet their burden.

Second, plaintiff is no longer incarcerated. He no longer has access to the Inmate Grievance Program and is now seeking only monetary damages. Thus, there are no longer any administrative remedies available to plaintiff.

■ Finally, defendants concede that if I were to dismiss plaintiff's claims for failure to exhaust his administrative remedies, plaintiff, no longer a prisoner, could simply refile his § 1983 claims without being subject to the PLRA's exhaustion requirement. (*See* Tr. at 3); *see also Greig v. Goord,* 169 F.3d 165, 167 (2d Cir.1999) (per curiam) (holding that PLRA does not apply to litigants "who file prison condition actions after release from confinement"). Plaintiff's claims under § 1983 and § 504 of the Rehabilitation Act are subject to New York's three-year limitations period for personal injury claims. *See Wilson v. Garcia,* 471 U.S. 261, 266, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (holding that state personal injury limitation applies to § 1983 claims); *Bates v. Long Island R.R. Co.,* 997 F.2d 1028, 1037 (2d Cir.) (applying New York's three-year personal injury limitation to § 504 claims), *cert. denied,* 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993); *see also* N.Y. C.P.L.R. § 214(5) (McKinney 1999). There is also support for applying the same limitations period to claims brought under Title II of the ADA. *See, e.g., Everett v. Cobb County Sch. Dist.,* 138 F.3d 1407, 1409 (11th Cir.1998) (holding that state personal injury limitations period should be applied to Title II claims); *Duprey v. Connecticut Dep't of Motor Vehicles,* 191 F.R.D. 329, 341 (D.Conn.2000) (applying state personal injury limitation to claim under Title II of ADA by analogy to Rehabilitation Act). Thus, if I were to dismiss plaintiff's claims related to his incarceration at Green Haven for failure to exhaust, plaintiff could then refile most if not all of those claims without being subject to the PLRA's exhaustion requirements. Accordingly, in the interest of judicial efficiency, and because defendants have failed to meet their burden, defendants' motion to dismiss for failure to exhaust is denied.

## D. *DOCS' Immunity from Suit*

■ Plaintiff has asserted claims against DOCS for violations of Title II of the ADA and § 504 of the Rehabilitation Act. DOCS contends that because it is a state agency, it is insulated from suit by the Eleventh Amendment. DOCS' position is incorrect as a matter of law. "It is well-settled that states and their agencies cannot be sued absent either their express or implied consent or an express abrogation by Congress of the states' Eleventh Amendment immunity" and that DOCS is a state agency entitled to assert the state of New York's sovereign immunity. *Timmons v. New York State Dep't of Correctional Services,* 887 F.Supp. 576, 579 (S.D.N.Y.1995) (citing *Santiago v. New York State Dep't of Correctional Services,* 945 F.2d 25, 28 n. 1 (2d Cir.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992)). Nevertheless, the Second Circuit has expressly held that "Congress has validly abrogated the States' immunity from suit under both the ADA and Section 504 of the Rehabilitation Act." *Kilcullen v. New York State Dep't of Labor,* 205 F.3d 77, 82 (2d Cir.2000); *see Jackan v. New York State Dep't of Labor,* 205 F.3d 562 (2d Cir.2000); *Muller v. Costello,* 187 F.3d 298 (2d Cir.1999).

DOCS notes in its reply memorandum that the Supreme Court recently granted certiorari on the question of whether Congress effectively abrogated the states' Eleventh Amendment immunity from suits under the ADA and the Rehabilitation Act.

*See Garrett v. University of Alabama at Birmingham Bd. of Trustees,* 193 F.3d 1214 (11th Cir.1999); *petition for cert. granted in part,* —— U.S. ——, 120 S.Ct. 1669, 146 L.Ed.2d 479 (2000) (No. 99–1240). Regardless, I am bound by the law of the Second Circuit as it now stands; plaintiff may assert claims against DOCS under both the ADA and the Rehabilitation Act.[3]

### E. Merits

#### 1. ADA and Rehabilitation Act Claims

Plaintiff sues DOCS, Goord, Bennett, Artuz, the Chairperson of the Temporary Release Committee at Green Haven, and Bendheim for violations of Title II of the ADA and § 504 of the Rehabilitation Act.

##### a. Applicable Law

■■ Title II of the ADA and § 504 of the Rehabilitation Act apply to inmates in state prisons. *See Pennsylvania Dep't of Corrections v. Yeskey,* 524 U.S. 206, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) (ADA); *Clarkson v. Coughlin,* 898 F.Supp. 1019, 1035 (S.D.N.Y.1995) (Rehabilitation Act). To state a claim under Title II of the ADA, a prisoner must show: "(1) he or she is a 'qualified individual with a disability'; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) the entity [that] provides the service, program, or activity is a public entity." *Clarkson,* 898 F.Supp. at 1037; *see Burgess v. Goord,* No. 98 Civ.2077, 1999 WL 33458, at *6 (S.D.N.Y. Jan. 26, 1999); *see also* 42 U.S.C. § 12132. To state a claim under § 504 of the Rehabilitation Act, a prisoner must establish that: (1) he is a "qualified individual with a disability"; (2) he is "otherwise qualified" to participate in the offered activity or program or to enjoy the services or benefits offered; (3) he is being

excluded from participation or enjoyment solely by reason of his disability; and (4) the entity denying the inmate participation or enjoyment receives federal financial assistance. 29 U.S.C. § 794(a); *see Clarkson,* 898 F.Supp. at 1036 (citing *Rothschild v. Grottenthaler,* 907 F.2d 286, 289–90 (2d Cir.1990)).

##### b. Application

Defendants do not appear to contest that: (1) plaintiff is disabled within the meaning of both statutes; (2) plaintiff was excluded from participation in offered programs; (3) plaintiff was otherwise qualified for admission into the programs; and (4) DOCS is a public entity that receives federal funding. Construing the motion papers liberally, defendants do appear to contend that plaintiff was denied access to both the shock incarceration and work release programs for reasons other than his disabilities. Defendants base this contention solely on plaintiff's acknowledgment that in January 1999 he received notification that he had been denied admission to the shock incarceration program based on factors such as his criminal history and unsatisfactory disciplinary adjustment.

■■ Plaintiff alleges, however, that the reasons given in the January 1999 notification were "pretextual." (Am.Compl.¶ 27). Moreover, plaintiff alleges that: (1) Crowley and other officials at Elmira denied him entrance into the shock incarceration program because of his physical disability; (2) unnamed officials at Elmira discussed his HIV-positive status in relation to his denial of admission to the shock incarceration program; and (3) Bendheim specifically stated that plaintiff should be denied admission to the Green Haven work release program because of his physical disability. (Am.Compl.¶¶ 20, 23–24). It is certainly possible that discovery will fail to substantiate plaintiff's allegations of dis-

---

3. Plaintiff does not assert claims against DOCS under § 1983. Had he done so, DOCS would be entitled to claim Eleventh Amend-

ment immunity from suit as to these claims. *See Timmons,* 887 F.Supp. at 579.

crimination. Nevertheless, at this early juncture, I am required to accept the truth of the allegations in the amended complaint. Accordingly, I hold that plaintiff has stated claims against DOCS under Title II of the ADA and § 504 of the Rehabilitation Act sufficient to withstand a motion to dismiss.

### c. Individual Liability

■ Defendants do not specifically address the question of whether plaintiff may assert claims against the individual defendants under Title II of the ADA and § 504 of the Rehabilitation Act. Although the Second Circuit has yet to decide the issue, I am persuaded by the language of the two provisions and the reasoning of other district courts within this circuit that the individual defendants may not be held liable under either statute.

"Title II provides disabled individuals redress for discrimination by a 'public entity.' That term, as it is defined in the statute, does not include individuals." *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1004 n. 8 (8th Cir.1999) (en banc) (citations omitted), *cert. granted in part sub nom, Alsbrook v. Arkansas*, —— U.S. ——, 120 S.Ct. 1003, 145 L.Ed.2d 947 (2000), *cert. dismissed,* —— U.S. ——, 120 S.Ct. 1265, 146 L.Ed.2d 215 (2000) (No. 99–423); *see also, Smith v. University of State of New York*, No. 95 Civ. 0477E, 1997 WL 800882, at *7 (W.D.N.Y. Dec. 31, 1997) ("The legislative history of the ADA indicates that the discriminatory practices of public entities, and not individuals, are the target of Title II."). Similarly, § 504 of the Rehabilitation Act is directed at prohibiting discrimination against the disabled by public entities that receive funding from the federal government. *See* 29 U.S.C. § 794.

In addition, district courts within this circuit have held that the Second Circuit's reasoning in *Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir.1995), *abrogated on other grounds, Burlington Indus. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), that Title VII does not provide for liability of individual employees, is "equally applicable to the question of individual liability under the ADA," including the public entity context of Title II of the ADA. *Cerrato v. Durham*, 941 F.Supp. 388, 395 (S.D.N.Y.1996); *see Candelaria v. Cunningham*, No. 98 Civ. 6273, 2000 WL 798636, at *2 (S.D.N.Y. June 20, 2000) (no individual liability under Title II of the ADA or the Rehabilitation Act against prison officials); *Nucifora v. Bridgeport Bd. Of Educ.*, No. 3:99 Civ. 00079, 2000 WL 887650, at *2 (D.Conn. May 23, 2000) (dismissing Title II claims against individuals "[i]n light of *Tomka*, and the overwhelming authority prohibiting individual liability under the ADA"); *Lee v. State of New York Dep't of Correctional Services*, No. 97 Civ. 7112, 1999 WL 673339, at *13 n. 14 (S.D.N.Y. Aug. 30, 1999) (dismissing Title II claims against corrections officers for "lack of individual liability under the ADA").

Some courts that have addressed the issue have drawn a distinction between ADA and Rehabilitation Act claims brought against a person in his individual capacity and those brought against a person in his official capacity. *See Candelaria*, 2000 WL 798636, at *2 (citing cases). These courts have held that "a person may not be held liable in his or her individual capacity, but may be held liable in his or her official capacity." *Id.* (citations omitted); *see, e.g., Butterfield v. New York*, No. 96 Civ. 5144, 1998 WL 401533, at *16 (S.D.N.Y. July 15, 1998) (holding supervisory employees could be sued in official capacity under ADA and Rehabilitation Act). I agree with Judge Preska's reasoning in *Candelaria*, however, that because claims against government officials in their "official capacity" are often permitted to avoid Eleventh Amendment and sovereign immunity issues, such claims are not necessary "when an individual can sue a government entity directly." 2000 WL 798636, at *3 (relying on *Bakal v. Ambassador Constr.*, No. 94 Civ. 584, 1995 WL

447784 (S.D.N.Y. July 28, 1995)). Because plaintiff is able to assert his ADA and Rehabilitation Act claims against DOCS directly, I find that there is no justification for allowing plaintiff to also assert ADA and Rehabilitation Act claims against the individual defendants in their official capacities. For the foregoing reasons, the ADA and Rehabilitation Act claims against the individual defendants Goord, Bennett, Artuz, Chairperson of the Temporary Release Committee at Green Haven, and Bendheim, in both their individual and official capacities, are dismissed.

## 2. Section 1983 Claim

■ Plaintiff sues Artuz, Selwin, Bendheim, and Weber under § 1983,[4] alleging that their failure to provide him with an adequate wheelchair from April 9, 1998 to September 10, 1998, and to treat the severe back pain that he developed because of the inadequate wheelchair, constituted deliberate indifference to his medical needs in violation of the Eighth Amendment of the United States Constitution.

■ To state a claim under § 1983, a plaintiff must show that: "(1) the defendant officials acted under 'color of state law'; and (2) their conduct or actions deprived plaintiff of a right, privilege, or immunity guaranteed by the Constitution or laws of the United States." *Shabazz v. Vacco,* No. 97 Civ. 3761, 1998 WL 901737, at *2 (S.D.N.Y. Dec. 28, 1998) (citing *Pitchell v. Callan,* 13 F.3d 545, 547–48 (2d Cir.1994)). "To withstand a motion to dismiss, a complaint alleging § 1983 claims must contain specific allegations of fact indicating a deprivation of plaintiff's constitutional rights." *Walker v. Goord,* No. 98 Civ. 5217, 2000 WL 297249, at *3 (S.D.N.Y. Mar. 22, 2000).

### a. *Eighth Amendment Standard*

■ The Eighth Amendment prohibits the infliction of "cruel and usual punishment" on those convicted of crimes. U.S. Const. amend. VIII. To establish an Eighth Amendment claim arising out of denial of medical care, a prisoner must prove "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The test includes both a subjective and an objective element. *See Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995).

■ First, the alleged deprivation of care must be "sufficiently serious" in objective terms. *Id.* (quoting *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). In the Second Circuit, "denial of a prisoner's serious medical needs includes 'not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain.'" *Brady v. Griffith,* No. 95 Civ. 2364, 1998 WL 814630, at *3 (S.D.N.Y. Nov. 23, 1998) (quoting *Todaro v. Ward,* 565 F.2d 48, 52 (2d Cir.1977)). "Second, the charged official must act with a sufficiently culpable state of mind." *Hathaway,* 37 F.3d at 66 (citing *Wilson,* 501 U.S. at 298, 111 S.Ct. 2321). The required culpability is something "more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Id.* The plaintiff must allege that an official "'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

---

**4.** Plaintiff sues all defendants in their official and individual capacities, except for Weber who is sued only in her individual capacity. Because claims for damages against defendants in their official capacities would be barred by the Eleventh Amendment, the Court assumes plaintiff is seeking damages against defendants in their individual capacities. *See Pritchett v. Artuz,* No. 99 Civ. 3957, 2000 WL 4157, at *4 (S.D.N.Y. Jan. 3, 2000).

### b. *Application*

■ Accepting the truth of plaintiff's allegations for purposes of this motion, as I must, I cannot conclude that plaintiff can prove no set of facts sufficient to meet the deliberate indifference standard. Plaintiff asserts that he suffered serious injury because of the five month deprivation of a proper wheelchair, *e.g.*, that he suffered "severe and unnecessary pain," "severe back pain," and a cut head. (Am. Compl.¶¶ 45–47). Moreover, he alleges that defendants failed to provide him with an appropriate wheelchair or to modify his own wheelchair despite his notification to Bendheim that he was in pain and his many grievances regarding the confiscation of his wheelchair.

The temporary nature of both the deprivation and the alleged pain call into doubt plaintiff's ability to prove that the denial was "sufficiently serious" in objective terms. At this early stage, however, without the benefit of information on the severity of plaintiff's pain and the medical appropriateness of the wheelchair DOCS offered to plaintiff, I cannot say that plaintiff fails to allege that he suffered sufficiently serious injury from the temporary lack of a fixed frame or other appropriate wheelchair. Nor can I reject, at this point, plaintiff's claim that defendants acted with a culpable state of mind in depriving him of a wheelchair customized to his needs. Accordingly, I hold that plaintiff's claim, as alleged, is sufficient to withstand a motion to dismiss. *See Burgess*, 1999 WL 33458, at *4 (denying motion to dismiss deliberate indifference claim alleging denial of access to cane and elevator); *Gadson*, 1997 WL 714878, at *5 (denying motion to dismiss deliberate indifference claim alleging denial of access to medically appropriate wheelchair).

### c. *Personal Involvement*

■ Defendants contend that even if plaintiff states a claim for deliberate indifference under § 1983, he has failed to allege the personal involvement of Goord, Bennett, Artuz, and Selwin. As plaintiff has not alleged a § 1983 claim against either Goord or Bennett, I address only the personal involvement of Artuz and Selwin.[5]

■ To recover damages under § 1983, a plaintiff must demonstrate a defendant's personal involvement in the alleged constitutional violations. *See Gadson*, 1997 WL 714878, at *9 (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994)). For purposes of § 1983, personal involvement means "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996); *see also Amaker v. Goord*, No. 98 Civ. 3634, 2000 WL 718438, at *3 (S.D.N.Y. June 5, 2000) (quoting same).

Plaintiff does not merely allege that Artuz and Selwin occupied supervisory positions or failed to respond to plaintiff's grievances. Rather, plaintiff alleges that Artuz and Selwin directly "refused to allow plaintiff's wheelchair to be repaired and ordered [its] confiscation." (Am. Compl.¶ 40). Although just barely meeting the minimum of what is required, plaintiff has alleged facts as to the personal involvement of both Artuz and Selwin sufficient to withstand a motion to dismiss.

### d. *Qualified Immunity*

■ Defendants further contend that even if plaintiff states a viable claim under § 1983, they are entitled to qualified immunity. "[A] prison official … may claim qualified immunity from suit … for [his] discretionary acts that do 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hathaway*, 37 F.3d at 67 (quoting *Harlow v. Fitzgerald*, 457

---

5. Defendants do not challenge the personal involvement of Bendheim or Weber.

U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Even where a prisoner's rights are clearly established, "qualified immunity is still available to an official if it was 'objectively reasonable for the public official to believe that his acts did not violate those rights.'" *Id.* (quoting *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir.1991)).

Defendants contend, in a conclusory fashion, that their actions were objectively reasonable. (*See* Def. Mem. at 19–20). Plaintiff, however, has adequately pled a claim for deliberate indifference. Because defendants could not have been deliberately indifferent and objectively reasonable at the same time, I hold that defendants are not entitled to qualified immunity based on the existing record. *See Hathaway*, 37 F.3d at 69; *Burgess*, 1999 WL 33458, at *6; *cf. Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir.2000) (finding existing record did not support dismissal of claims against prison officials based on qualified immunity). Defendants' motion, insofar as it seeks dismissal of the § 1983 claims based on qualified immunity, is denied.

### 3. *Pendent State Law Claims*

In response to defendants' motion to dismiss, plaintiff has agreed to withdraw the pendent negligence and New York Human Rights Law claims. (*See* Tr. at 18). Accordingly, the state law claims are dismissed.

### F. *Venue*

Defendants move to transfer this case to the Northern District of New York only in the event that all claims but those pertaining to Elmira are dismissed. (*See* Def. Mem. at 21). Because claims relating to Green Haven survive the motion to dismiss, I do not reach defendant's alternative motion.

### *CONCLUSION*

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. Defendants' motion is de-

nied with respect to the ADA and Rehabilitation Act claims asserted against DOCS and the § 1983 claims asserted against defendants Artuz, Selwin, Bendheim, and Weber in their individual capacities. The remainder of the motion is granted and all other claims are dismissed. As no claims remain against defendants Goord, Bennett, and the Chairperson of the Temporary Release Committee at Green Haven, they are dismissed from this action. The parties shall appear for a pretrial conference on September 15, 2000 at 11:00 a.m., United States Courthouse, Courtroom 11A, 500 Pearl Street, New York, New York 10007.

SO ORDERED.