**Beatrice MORRIS, Plaintiff,**

**v.**

**Gilbert EVERSLEY, Officer of the Bayview Correctional Center, in his official and individual capacities, Alexandreena Dixon, Superintendent of Bayview Correctional Facility, in her official and individual capacities, Elnora Porter, Assistant Deputy Superintendent of Programs of Bayview Correctional Facility, in her official and individual capacities, Darryl Warner, an employee of the Office of the**

---

New York State Inspector General, in his official and individual capacities and Faith Watson, an employee of Bayview Correctional Facility, in her official and individual capacities, Defendants.

No. 00 CIV.8166 DC.

United States District Court, S.D. New York.

June 13, 2002.

**236**

Milbank, Tweed, Hadley & McCloy LLP, Attorneys for Plaintiff, By Scott A. Edelman, Esq., Courtney E. Scott, Esq., New York, for Plaintiff.

Eliot Spitzer, Esq., Attorney General of the State of New York, Attorney for Defendants, By Jose L. Velez, Esq., Assistant Attorney General, New York, for Defendants.

### MEMORANDUM DECISION

CHIN, District Judge.

In this case, plaintiff Beatrice Morris alleges that while she was incarcerated at Bayview Correctional Facility ("Bayview"), defendant Gilbert Eversley, a corrections officer, entered her cell one night and sexually assaulted her. Morris contends that Eversley's conduct is but one example of an ongoing pattern and practice at Bayview of male corrections officers engaging in sexual contact with female prisoners. By law, any such conduct would be improper, as inmates are deemed incapable of consenting to sexual contact with prison employees. Morris further contends that the supervisors were aware of the inappropriate and prevalent sexual conduct at Bayview because of the number of complaints lodged by female prisoners and the incidence of pregnancies among inmates. Despite this knowledge, Morris claims, Bayview supervisors failed to act.

Morris brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants violated her rights under the Eighth Amendment to the Constitution and state law. Defendants Alexandreena Dixon and Elnora Porter move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim.[1] They contend that

---

1. Morris filed a notice of voluntary dismissal pursuant to Fed.R.Civ.P. 41(a) as to defen-

Morris has failed to exhaust her administrative remedies and that the amended complaint fails to state claims against them for supervisory liability. They argue also that the state law claims must be dismissed for lack of subject matter jurisdiction. For the reasons set forth below, the motion is denied.

## BACKGROUND

### A. Facts

The following facts are drawn from the complaint and attached exhibits as well as the amended complaint. Although defendants deny plaintiff's allegations, as required, I assume plaintiff's alleged facts are true for purposes of this motion. The parties have also submitted additional information concerning Morris's efforts to exhaust her administrative remedies.

### 1. The Parties

Morris was incarcerated at Bayview, a medium security women's prison, from March of 1999 through June of 1999. (Am.Compl.¶ 12). She was later incarcerated at Taconic Correctional Facility, and was released on parole on November 10, 2000. During Morris's incarceration at Bayview, defendant Eversley was employed as a corrections officer by the New York State Department of Correctional Services ("DOCS"), assigned to Bayview. (Id. ¶¶ 4, 14). Defendants Dixon and Porter were also employed by DOCS and assigned to Bayview at that time. (Id. ¶¶ 5–6). Dixon served as Superintendent of Bayview, and Porter served as Assistant Deputy Superintendent of Programs. (Id.). Captain Werbacker also worked at

Bayview, and had supervisory authority over Eversley.[2]

### 2. The Assault

Throughout Morris's incarceration at Bayview, Eversley had custodial authority over inmates, including Morris. (Id. ¶ 14). This authority translated into "custody and control over Morris'[s] person, her housing, and her rights and privileges as an inmate at Bayview." (Id. ¶ 15). In approximately March of 1999, Eversley began to make sexually suggestive comments to Morris. (Id. ¶ 16). On the night of April 18, 1999, after "lights out" had been called, Eversley entered Morris's cell, without warning, as she lay sleeping. (Id. ¶ 17; Compl. Ex. B). Morris was awakened by Eversley's touch, and immediately told him to get out. He refused. Exposing himself, Eversley pulled back the covers on Morris's bed. Morris was petrified and repeatedly told him to stop; again, he refused. Eversley restrained her, forced himself upon her, and sexually assaulted her. (Compl. Ex. B; Am. Compl. ¶ 18).

### 3. Morris Seeks Relief

After the assault, Morris retained the bed sheet as evidence of the assault. (Id. ¶ 29). She isolated herself from other inmates and avoided corrections officers, fearing for her safety. (Id. ¶ 23). Morris was initially reluctant to report the assault, fearing that Eversley would retaliate against her. (Id. ¶ 22). On June 7, 1999, Eversley filed a disciplinary report against Morris, citing alleged infractions. (Compl. Ex. A; Am. Compl. ¶ 24). Thereafter, Morris reported Eversley's sexual assault to Captain Werbacker, who had supervisory authority over Eversley. (Am.

dants Darryl Warner and Faith Watson on June 4, 2002. Defendant Eversley has answered and has not moved to dismiss.

**2.** Captain Werbacker was originally named as "John/Jane Werbacker" in the complaint, but has not been named in the amended complaint. (Am.Compl.¶ 13).

Compl.¶¶ 13, 27). She provided details of the assault in a letter, and met with Darryl Warner of the New York State Inspector General's Office to further discuss the attack. (*Id.* ¶¶ 7, 27–28). Morris also gave Warner and Werbacker the bed sheet she had retained from the night of the assault; laboratory testing later confirmed the presence of semen on the sheet. (*Id.* ¶¶ 29, 32).

On June 30, 1999, Morris executed a Notice of Intention To File Claim, addressed to the New York State Attorney General. Morris set forth the nature of her claim in detail, and noted that the administration and the Inspector General's Office had previously been informed of the matter. (Compl.Ex. B).

Notwithstanding Morris's complaint, Eversley has not been removed from his position and is still employed at Bayview. (Am.Compl.¶ 37). He has engaged in sexual conduct with other prisoners at Bayview, as have other corrections officers employed by Bayview. (*Id.* ¶ 37). Prisoners have also complained to supervisors of unwelcome sexual contact by corrections officers, and prisoners have become pregnant while incarcerated at Bayview. (*Id.* ¶¶ 20–21). The supervisory authority at Bayview has failed to adequately investigate Eversley's conduct or to discipline him. (*Id.* ¶ 33).

The District Attorney's Office for New York County is conducting an investigation into facts surrounding Eversley's assault on Morris. (*Id.* ¶ 32).

## B. *Prior Proceedings*

Morris brought this action by submitting her *pro se* complaint to the Court's *Pro Se* Office on August 2, 2000. She was granted *in forma pauperis* status and the com-

plaint was filed on October 25, 2000. Morris later obtained counsel and filed an amended complaint on January 18, 2002. On March 15, 2002, defendants Dixon, Porter, Warden, and Watson moved to dismiss the complaint, and the Court heard oral argument on the motion on May 24, 2002. After oral argument, Morris discontinued her claims against Warner and Watson.

## *DISCUSSION*

Morris seeks relief pursuant to 42 U.S.C. § 1983, alleging that defendants violated her rights under the Eighth Amendment to the Constitution and state law. Defendants Dixon and Porter move to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6) on grounds that (1) Morris failed to exhaust available administrative remedies; (2) defendants Dixon and Porter were not personally involved; (3) defendants are entitled to qualified immunity; and (4) this Court lacks subject matter jurisdiction over plaintiff's state law claims.[3]

## A. *Applicable Law*

### 1. *Motion to Dismiss Standard*

On a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996) (citation omitted). The issue is not whether the plaintiff will ultimately prevail, but whether she is entitled to offer evidence to support her claim. *Id.* (citation omitted). Dismissal is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her]

---

**3.** Because Morris has voluntarily dismissed the claims against Warner and Watson, I do

not address defendants' arguments in favor of dismissal of the claims against them.

claim which would entitle [her] to relief." *Cooper v. Parsky,* 140 F.3d 433 (2d Cir. 1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

## 2. *Section 1983*

■■■ To state a claim under § 1983, a plaintiff must allege a deprivation of a constitutional or federal statutory right and that the deprivation occurred under color of state law. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). The Second Circuit has held that sexual abuse by a corrections officer may violate a prisoner's right to be free from cruel and unusual punishment. *Boddie v. Schnieder,* 105 F.3d 857, 860–61 (2d Cir.1997) ("[S]exual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is 'simply not part of the penalty that criminal offenders pay for their offenses against society.' ") (quoting *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). An official violates the Eighth Amendment where (1) the alleged "punishment" is "objectively, sufficiently serious," and (2) the official involved has a "sufficiently culpable state of mind." *Id.* (quoting *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970 (citation internal quotation marks omitted)); *Branham v. Meachum,* 77 F.3d 626, 630 (2d Cir.1996).

## 3. *New York Penal Law § 130.05*

New York Penal Law § 130.05, entitled "Sex Offenses; lack of consent," provides that: "Whether or not specifically stated, it is an element of every offense defined in this article ... that the sexual act was committed without consent of the victim." N.Y. Penal Law § 130.05(1) (McKinney 1997). Under this section, "[a] person is deemed incapable of consent when he or she is ... committed to the care and cus-

tody of the state department of correctional services ... and the actor is an employee, not married to such person, who knows or reasonably should know that such person is committed to the care and custody of such department ...." § 130.05(3)(e). For purposes of § 130.05, "employee" means, *inter alia,* an "employee of the state department of correctional services who performs professional duties in a state correctional facility consisting of providing custody, medical or mental health services, counseling services, educational programs, or vocational training for inmates ...." *Id.*

## B. *Application*

### 1. *Exhaustion of Available Administrative Remedies*

Defendants first argue that Morris's claims should be dismissed because she has failed to exhaust her administrative remedies as required by the Prison Litigation Reform Act of 1995 (the "PLRA"). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1994 ed., Supp. V). The Supreme Court has recently held that this exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 986, 152 L.Ed.2d 12 (2002).

In New York, the administrative grievance process established to resolve prisoners' grievances is known as the Inmate Grievance Program (the "IGP"). N.Y. Comp.Codes R. & Regs. ("NYCRR") tit. 7 §§ 701.1–701.16 (1995); *see also Cruz v. Jordan,* 80 F.Supp.2d 109, 117 (S.D.N.Y. 1999). Each prison has established an Inmate Grievance Resolution Committee (the

"IGRC"), which is required "to resolve grievances or make recommendations for the resolution of the grievances filed." NYCRR tit. 7 § 701.7(a). According to the IGP, prisoners are generally required, among other things, to submit their grievances to the IGRC within 14 days of the alleged occurrence, and the IGRC must either dismiss the grievance or resolve it on the merits. *Id.* § 701.7(a)(1)-(5).

Defendants argue that Morris has not pursued any administrative remedies available under the IGP, as she never filed a grievance with the IGRC. (Defs. Mem. Supp. Dismiss at 10). They contend that Morris's release from prison is irrelevant, and insist that the action must be dismissed for failure to exhaust. (*Id.* at 11–12). They contend, in essence, that Morris is forever barred from pursuing the claims.

These arguments are rejected for the following reasons. First, although Morris failed to file a grievance with the IGRC, she exhausted her remedies under § 701.11 of the IGP. Section 701.11, entitled "Harassment," is specifically designed to address "[e]mployee misconduct meant to annoy, intimidate, or harm an inmate ...." NYCRR tit. 7 § 701.11(a). The section provides: "Allegations of employee harassment are of particular concern to the administrators of department facilities. Therefore, the following expedited procedure for the review of grievances related to harassment shall be followed." *Id.* § 701.11.

Under the expedited procedure, the prisoner is first directed to bring the offensive conduct to the attention of the employee's supervisor. *Id.* § 701.11(b)(1). The Superintendent of the facility must then determine if the grievance is a "bona fide" case of harassment. *Id.* § 701.11(b)(3). If so, the grievance remains on an expedited track for prompt resolution. *Id.* § 701.11(b)(4)-(6). If not,

the grievance is submitted to the IGRC for resolution in accord with the procedure outlined above. *Id.* § 701.11(b)(3). In either event, the Superintendent is required to deliver a decision, "with reasons stated to the grievant," within twelve working days of receipt of the grievance. *Id.* § 701.11(b)(5). Extensions may only be granted with the consent of the grievant. *Id.* If the Superintendent fails to respond to the grievance within the required time limitation, the grievant "may" file an appeal directly to the Central Office Review Committee (the "CORC"), a committee comprised of deputy and assistant commissioners of DOCS or their designees. *Id.* §§ 701.11(6); 701.6(a) & 701.7(c); *Cruz,* 80 F.Supp.2d at 118.

■ Morris's "grievance" was covered by § 701.11, as she was alleging that Eversley engaged in conduct "meant to annoy, intimidate or harm" her, beginning with sexually suggestive comments and culminating in *forcible restraint and sexual assault. See* NYCRR tit. 7 §§ 701.11, 701.11(a). In accordance with the expedited procedure, Morris brought the offensive conduct to the attention of Eversley's supervisor, reporting the assault to Captain Werbacker, in writing. (Am.Compl.¶¶ 13, 27). At that point, defendant Dixon, the Superintendent, was required to determine whether the harassment was "bona fide" and deliver a decision within twelve working days of receipt of the grievance. Dixon failed to deliver a decision within the time specified. While Morris could have appealed this failure to respond to the CORC, she was not required to do so. *Id.* § 701.11(b)(6) ("the grievant *may* appeal his grievance to the CORC") (emphasis added). Moreover, it is undisputed that Morris's allegations were also brought to the attention of the Inspector General's office, the Attorney General's office, and the Manhattan District Attorney's office. Under the circumstances, I conclude that

Morris has exhausted her administrative remedies under § 701.11.

Second, even if Morris did not exhaust her administrative remedies, she is no longer incarcerated. Defendants' assertions to the contrary notwithstanding, this fact is highly relevant: the Second Circuit has held that any dismissal for failure to exhaust must be without prejudice. *Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir.2002) (citing *Giano v. Goord*, 250 F.3d 146, 150–51 (2d Cir.2001)). The PLRA requires exhaustion of "such administrative remedies as are available." 42 U.S.C. § 1997e(a). Thus, even if I were to dismiss Morris's claims, no administrative remedies are "available" to her because she is no longer a prisoner;[4] Morris could simply refile her § 1983 claims unaffected by the PLRA's exhaustion requirement. *Greig v. Goord*, 169 F.3d 165, 167 (2d Cir.1999) (holding that litigants "who file prison condition actions after release from confinement are no longer 'prisoners' for purposes of § 1997e(a) and, therefore, need not satisfy [its] exhaustion requirements"); *Hallett v. New York State Dep't of Correctional Services*, 109 F.Supp.2d 190, 197 (S.D.N.Y.2000) (same). As I noted in *Hallett*, considerations of judicial efficiency and economy advise against dismissal of Morris's claims. 109 F.Supp.2d at 197.

## 2. *Defendants' Personal Involvement*

Defendants Dixon and Porter also argue that they cannot be held responsible for Morris's injuries under § 1983 because they were not personally involved in the deprivation of her constitutional rights. This claim is rejected.

Defendants correctly argue that personal involvement in the alleged constitutional deprivation is a prerequisite to an award of damages under § 1983. *See Al–Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1066 (2d Cir.1989) (citation omitted). Direct participation, however, is not necessary. *Id.* A supervisory official may be personally liable if she has " 'actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act.' " *Id.* (quoting *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir.1989)). Thus, Morris can state a claim for personal involvement by alleging that defendants: (1) participated directly in the alleged constitutional violation; (2) failed to remedy the wrong after being informed through a report or an appeal; (3) created a policy or custom under which unconstitutional practices occurred or allowed the continuation of such policy or custom; (4) was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994)).

Morris has alleged sufficient facts to survive defendants' motion to dismiss. Indeed, Morris has alleged that defendants knew corrections officers at Bayview were engaging in sexual contact with female prisoners but failed to act—thereby allowing the abusive "practice" to continue. For example, she has alleged that defendants previously received complaints from female prisoners regarding sexual abuse

---

4. On their face, the IGP procedures are available only to inmates and visitors to prisons; they do not appear to be available to former prisoners. Accordingly, there are no administrative procedures available to Morris at this juncture. *See Liner v. Goord*, 115 F.Supp.2d 432, 434 (S.D.N.Y.2000) ("Given the fact that [plaintiff] has been released from prison and could not now be ordered to exhaust all available administrative remedies, the Court will consider the merits and not grant judgment to Defendants for failure to exhaust administrative remedies.").

by male guards, including Eversley. These complaints were purportedly corroborated by the incidence of pregnancies among inmates. Morris therefore contends that defendants knew or should have known of the illegal conduct. She also alleges that defendants were grossly negligent in supervising their subordinates, because they had received prior complaints about Eversley—and yet failed to adequately monitor his actions such that the assault on Morris could occur.

Finally, Morris has alleged that defendants failed to remedy the wrong after being informed through a report. For example, as required by § 701.11 of the IGP, Morris reported Eversley's assault to Captain Werbacker, Eversley's supervisor, in writing. Section 701.11 then directs the *Superintendent* to determine whether an inmate's grievance is "bona fide," and to deliver a decision within twelve days of receipt of the grievance. Thus, the IGP presumes the communication of grievances among supervisory officials—in fact, § 701.11 *required* Captain Werbacker to inform Dixon of Morris's grievance. Yet, the supervisors at Bayview failed to adequately investigate Eversley's conduct, discipline him, or remove him from circulation among the female prison population. In view of these allegations, Morris has alleged defendants' "personal involvement" inasmuch as they knowingly allowed the "practice" of officers sexually abusing prisoners to continue, were grossly negligent in supervising subordinates, failed to remedy the wrong after being informed through a report, or acted with deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995) (citation omitted).

### 3. *Qualified Immunity*

■ Defendants alternatively argue that, in the event Morris's § 1983 claims are viable, they are entitled to qualified immunity. Government officials performing discretionary functions are "shielded from liability for civil damages" as long as their conduct does not breach "clearly established statutory or constitutional rights of which a reasonable person would have known." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir.1995) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). This defense protects the government actor where it is objectively reasonable for him to believe that his actions are lawful at the time of the challenged act. *Id.* (citations omitted). Thus, "the objective reasonableness test is met—and the defendant is entitled to immunity—if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 340–41, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

■ This contention is rejected. Assuming, as I must, that the allegations set forth above are true for purposes of this motion, they plainly state a claim for the deprivation of a constitutional right, namely, the right to be free from cruel and unusual punishment in the form of sexual abuse. Morris has alleged that Dixon and Porter were aware of Eversley's conduct, as well as the similar "practice" carried on by other officers at Bayview.

Under New York Penal Law § 130.05, entitled "Sex offenses; lack of consent," a person is deemed incapable of consent when she is committed to the care and custody of the state department of correctional services. N.Y. Penal Law § 130.05(3)(e). As Superintendent and Assistant Deputy Superintendent of Programs at Bayview, defendants are charged with knowledge of this law. If Morris's allegations are true, no "officers of reasonable competence could disagree" that the

defendants' actions were unlawful. Accordingly, at this juncture, defendants are not entitled to the protection of qualified immunity.

### 4. *State Law Claims*

 Finally, defendants argue that Morris's state law claims must be dismissed for lack of subject matter jurisdiction. "[T]he federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that 'derive from a common nucleus of operative fact,' such that 'the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional case.'" *City of Chicago v. Int'l College of Surgeons,* 522 U.S. 156, 164–65, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). This Court has subject matter jurisdiction over Morris's § 1983 claim; as alleged in the amended complaint, the state law tort claims arise out of the same "nucleus of operative fact." The motion to dismiss these claims is therefore denied.

Moreover, to the extent defendants are arguing that the tort claims are in actuality claims against the state that must be heard in the New York State Court of Claims, the argument is rejected as well, for the negligence claims asserted here are the type of tort claims that would support a claim of a constitutional violation that may be addressed under § 1983.

### CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is denied.

SO ORDERED.